# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2026

Lyle W. Cayce
Clerk

No. 25-30536

MAPP, L.L.C.,

*Plaintiff—Appellee*,

*versus*

FLOOR AND DECOR OUTLETS OF AMERICA, INCORPORATED,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-444

Before SOUTHWICK, GRAVES, and WILSON, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

Floor and Decor Outlets of America seeks enforcement of its contractual discretion to elect that a claim brought by its former contractor, MAPP, L.L.C., be arbitrated. The district court denied F&D's motion to compel arbitration, and this appeal followed. We agree with the district court that, under Louisiana law, the clause is adhesionary and unenforceable.

AFFIRMED.

No. 25-30536

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, Floor and Decor Outlets of America, Inc. ("F&D"), a national flooring retailer, contracted with MAPP, L.L.C., a Louisiana construction management company, for the building of an F&D retail store in Metairie, Louisiana. The construction agreement was memorialized in a Master Agreement Between Owner and Contractor ("the Agreement").

In November 2022, F&D sent a notice to MAPP terminating the Agreement because of schedule delays in the project. Three days later, Michael Polito, the CEO of MAPP, emailed a number of F&D personnel asserting that MAPP's conduct had not constituted a breach of contract and requesting that the termination be canceled. An F&D executive responded that the company's counsel would contact MAPP. Communications continued until December, when Polito sent a letter to F&D demanding over three million dollars for the work performed through the termination date. F&D did not respond.

In January 2023, MAPP sued F&D in the United States District Court for the Middle District of Louisiana under the Louisiana Private Works Act ("LPWA").[1] F&D moved to compel arbitration and transfer venue to the Eastern District of Louisiana. The district court granted the motion to transfer and denied the motion to compel without prejudice. In the new district court, F&D again moved to compel arbitration, arguing that the Agreement had an express arbitration provision that covered MAPP's claim.

The relevant language in the Agreement's arbitration provision is this:

---

[1] The LPWA secures the obligations of construction project owners to contractors, among others, for the price of their work through a "privilege on an immovable." LA. R.S. § 9:4801; *Golden Nugget Lake Charles, L.L.C. v. W.G. Yates & Sons Constr. Co.*, 850 F.3d 231, 233 (5th Cir. 2017).

> Any disputed Claims that cannot be decided by confidential negotiation or mediation may, in the sole discretion of Owner, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.

The district court found that F&D had not complied with the Agreement's dispute resolution procedure, "which sets forth several steps that must be taken before F&D can request arbitration." Thus, according to the district court, MAPP's claim was outside the ambit of the arbitration clause. The district court denied F&D's motion to compel. F&D timely appealed.

## DISCUSSION

"We review *de novo* a ruling on a motion to compel arbitration." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The Federal Arbitration Act ("FAA"), Pub. L. No. 68-401, 43 Stat. 883 (1925), enacted by Congress in 1925, governs this dispute. The Supreme Court has instructed that the FAA establishes two principles for courts to apply: first, that "arbitration is a matter of contract," and second, that there is a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

This court follows two steps to determine whether a motion to compel arbitration should be granted: (1) "we ask if the party has agreed to arbitrate the dispute" and if so, (2) "we then ask if 'any federal statute or policy renders the claims nonarbitrable.'" *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)). The parties do not assert that any federal statute or policy bars the proposed arbitration, so we do not address the second step. *See id.*

The "first step itself contains two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Id.* The district court considered both issues, then denied the motion on the basis that F&D's failure to initiate arbitration properly left the dispute outside the scope of the arbitration clause. We apply a different analysis, concluding there was not a valid arbitration agreement, and need not reach whether the dispute was within the scope of the agreement. Our decision affirms on different grounds than those relied on by the district court, which is appropriate under our *de novo* review. *See Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1065 (5th Cir. 2023).

## I.    *Validity of the Agreement to Arbitrate*

To compel arbitration, there must be a valid agreement between the parties to arbitrate. We do not apply the "the federal policy favoring arbitration when addressing ambiguities" to the question of "whether a valid agreement exists." *Sherer*, 548 F.3d at 381. Under Section 2 of the FAA, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Generally applicable rules of state law "such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements," as such grounds may be used to invalidate any contract. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id.* Statutes singling out arbitration clauses with more demanding rules are invalid. *Id.*

One generally applicable defense against the validity of a contract under Louisiana law is adhesion. *Aguillard v. Auction Mgmt. Corp.*, 2004-

4

2804 (La. 6/29/05), 908 So. 2d 1, 9–11. "A contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent." *Id.* at 11. The district court addressed without deciding, and the parties continue to press before this court, the issue of whether the arbitration clause at issue in this case is adhesionary.

MAPP argues that the lack of mutuality in the arbitration clause — under the contract, F&D may compel MAPP to arbitrate its claims against F&D, but MAPP cannot compel F&D to arbitrate its claims against MAPP — is enough to make it adhesionary under Louisiana law, and therefore invalid. F&D disagrees that the provision lacks mutuality.

The contested arbitration provision provides that "[a]ny disputed Claims that cannot be decided by confidential negotiation or mediation may, *in the sole discretion of Owner*, be decided by arbitration." F&D contends, imaginatively, that this reflects mutuality because "upon F&D's election to arbitrate, MAPP's and F&D remaining disputed claims must be arbitrated without regard for which party is asserting a [c]laim." We disagree. The text of the provision reveals F&D has the sole discretion to choose which disputed claims to elect to arbitrate.

Given these unilateral rights, we examine whether the contract is one of adhesion. The goal under Louisiana law is to make a finding of whether a "party truly consented to the contract terms." *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16), 411 So. 3d 605, 613.

*Duhon* provides the test for adhesion. There, the Louisiana Supreme Court considered the validity of a non-mutual arbitration clause in a risk agreement signed by the patrons of an indoor trampoline park. *Id.* at 606. The clause mandating arbitration applied only to the patrons, leaving the

trampoline park with complete discretion. *Id.* at 608. Mindful of the FAA, the court drew from "general state contract principles" in assessing the provision. *Id.* at 610. The court applied four adhesion factors gleaned from its precedent: "(1) the physical characteristics of the arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, and (4) the relative bargaining strength of the parties." *Id.* at 611 (citing *Aguillard*, 908 So. 2d at 10–11). Two factors counseled in favor of finding it adhesionary: (1) the physical characteristics of the clause, which was "cloak[ed] within a blanket of boilerplate language regarding rules and risks" and (2) the lack of mutuality in the clause, which "fortifie[d]" the court's concerns. *Id.* at 612. The court held the clause unenforceable. *Id.* Obviously, if nothing else, the bargaining strength of visitors to a trampoline park in deciding whether to accept an arbitration clause before entering the park is far less than the bargaining strength of a sophisticated potential contractor when negotiating a contract.

The *Duhon* court cautioned that it was not "requiring term-for-term mutuality in an arbitration clause," which "could risk running afoul of the FAA." *Id.* at 613. That court was clear that there is no categorical rule barring non-mutual arbitration clauses. In evaluating arbitration clauses, a court applying Louisiana law must consider "the context of the overall contract and the surrounding circumstances" and "weigh[ the] several factors." *Id.* We agree that Louisiana's approach does not single out arbitration agreements for disfavor, as would be prohibited by Section 2 of the FAA. We therefore will apply it here.

We examine other relevant precedent before returning to *Duhon*. This court has addressed a similar question of adhesion under Louisiana law in *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 171 (5th Cir. 2004). There, the parties disputed whether a non-mutual arbitration clause in a wireless company's contract was enforceable against various

plaintiffs, including a sheriff's department. *Iberia*, 379 F.3d at 162–164, 168. The court cited "[r]ecent Louisiana appellate cases" that had "deemed" one-sided arbitration clauses to be "unconscionable and unenforceable."[2] *Id.* at 169. The court found "serious question[s] as to the clause's validity" and affirmed the district court's denial of the motion to compel arbitration. *Id.* at 169, 176.

F&D relies on two Louisiana Court of Appeal decisions. In one, the court found a contract to be enforceable even though "the [arbitration] clause lack[ed] mutuality and there [was] an apparent disparity in the parties' bargaining positions." *Hanlon v. Monsanto Ag Prods., LLC*, 48,010 (La. App. 2 Cir. 10/9/13), 124 So. 3d 535, 544. In the other, the court held that the mere absence of mutuality was insufficient to invalidate the agreement in dispute. *See Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee*, 2005-1491 (La. App. 4 Cir. 7/12/06), 936 So. 2d 853, 859. Significantly, both opinions preceded *Duhon*.

F&D explains the divergence in outcomes in the caselaw by asserting that two of them involved "take it or leave it" business to consumer transactions while the other two were "business to business" transactions. That distinction can have relevance only to the extent it is consistent with the *Duhon* factor-by-factor analysis.

We now return to *Duhon* in order to consider the four factors it identified.[3] We examine together the first two factors: the physical

---

[2] The court considered *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*, 2000-511 (La. App. 3 Cir. 12/13/00), 776 So. 2d 589 and *Posadas v. The Pool Depot, Inc.*, 2002-1819 (La. App. 1 Cir. 6/27/03), 858 So. 2d 611.

[3] In its briefing, MAPP only asserts one factor — the lack of mutuality — as a basis for treating the arbitration clause as adhesionary. We agree with F&D that this, alone, is insufficient and therefore consider all four.

characteristics and distinguishing features of the arbitration clause in the contract. While the arbitration clause here is just one paragraph of many, written in standard boilerplate in a long, single-spaced document, the arbitration clause is legible, demarcated, and set within a wider dispute resolution section. The provision was not hidden or "cloak[ed]." *See Duhon*, 411 So. 3d at 612 (concluding that the plaintiff "did not truly consent to the arbitration provision" when the provision was "cloak[ed]" in a "blanket of boilerplate language"). In *Aguillard*, the opinion the *Duhon* court relied on for the four factors, the state supreme court found that clearly setting off and labeling the arbitration clause weighed in favor of enforcement. *Aguillard*, 908 So. 2d at 16.

We have already discussed mutuality, which is the third factor. The contract gives F&D the right to compel MAPP to arbitrate under the contract, while denying MAPP the same right. To add to this inequity, the contract provides that "each party shall be entitled to any attorneys' fees incurred by such party for any motions practice required to enforce this provision by litigation, including any motions to compel arbitration, which shall be awarded by the arbitrator in the form of an interim award upon application for fees by the party enforcing this provision." As only F&D may enforce the provision, this seemingly symmetrical language is a one-sided fees award to F&D for the costs of compelling arbitration. The clause would punish only one party, MAPP, "for seeking to initiate a lawsuit." *Duhon*, 411 So. 3d at 619 (CRICHTON, J., concurring). Under this provision, F&D can obtain costs for the motion to compel arbitration even if it had not, at the time of MAPP's filing of a claim, chosen to arbitrate the dispute. This factor supports adhesion.

Finally, the fourth factor is the bargaining position of the parties. In *Aguillard*, the Louisiana Supreme Court explained that "[a]n unequal bargaining position is evident when the contract unduly burdens one party in

comparison to the burdens imposed upon the drafting party and the advantages allowed to that party." 908 So. 2d at 10. Inconsistent with that explanation, the district court here stated that there "is no evidence before the Court that there was a significant difference in bargaining power between the parties." According to *Aguillard*, the evidence is the contract itself, as it unduly burdens one party in comparison to the burdens on the drafting party. We examine the relevant evidence to see how well it reflects what *Aguillard* stated was evident from this sort of imbalance in the contract.

To find a contractor for this project, F&D, a major retail chain, engaged in a competitive bid process. MAPP is a local Louisiana construction management company. Once MAPP's bid was selected, F&D provided a standard form contract that MAPP had no input in drafting. Whether MAPP, after winning the bid, could have bargained for a revision to give mutuality to the arbitration provision was not tested insofar as we can tell from the record, but it was a local contractor seeking a national retail chain's business. The facts of this case further confirm what the terms of the contract demonstrate: MAPP was in an inferior bargaining position to F&D.

Two of the four factors in the *Aguillard-Duhon* list support adhesion. We consider the two supporting adhesion sufficient, as they deal with the effect of the contract on the party forced to arbitrate. The two that do not favor adhesion relate to whether the arbitration clause was sufficiently obvious in the contract. Together, the evidence relevant to the four factors demonstrates that MAPP was sufficiently aware of the unequal terms but that it had little choice but to accept them in order to obtain the contract.

The arbitration provision was adhesionary under Louisiana law and thus unenforceable.

AFFIRMED.

CORY T. WILSON, *Circuit Judge*, concurring in the judgment:

I agree with the majority that we should affirm the district court's denial of F&D's motion to compel arbitration, but I would do so for the same reason the district court gave for its ruling: F&D fails to show that it complied with the parties' dispute resolution procedure antecedent to invoking the arbitration clause.

The dispute resolution procedure delineated in the parties' Agreement has a few steps. First, MAPP must submit a claim to F&D's Project Manager. The Project Manager then has thirty days to issue a written decision. If MAPP disagrees with the decision, it must submit the claim for confidential negotiation and mediation. And if negotiation and mediation do not resolve the dispute, only then may the claim go to arbitration.

That did not happen here. After F&D terminated the Agreement, MAPP submitted a claim to F&D. But once the ball was in F&D's court, F&D dropped it. As the district explained, there is no serious disagreement that F&D's Project Manager never provided MAPP with a written decision on MAPP's claim, much less within the thirty-day window specified by the Agreement. And though some communications were exchanged between the parties, no "confidential negotiation and mediation" ever occurred. Therefore, as the district court concluded, whatever duty MAPP had to arbitrate its claim was never triggered.

On appeal, F&D argues that compliance with pre-arbitration dispute resolution procedures is a question of procedural arbitrability properly reserved to an arbitrator. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555–57 (1964). But F&D did not raise this argument until appeal, so it is not properly preserved. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009). And while there is a "general rule in favor of the arbitrator's deciding questions of procedural arbitrability," this court has

recognized an exception when no "rational mind could conclude" that the parties complied with the dispute resolution procedure. *Gen. Warehousemen and Helpers Union Loc. 767 v. Albertson's Distrib., Inc.*, 331 F.3d 485, 488 (5th Cir. 2003). And here, F&D plainly did not.

Moreover, because F&D's "breach of the procedural requirement" preceding arbitration "was clear," *id.*, it is not necessary to reach the knottier question of whether the arbitration clause at issue is adhesionary under Louisiana law. Given that it is at least somewhat uncharted as to how the Louisiana Supreme Court would apply the four-factor test it articulated in *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16), 411 So. 3d 605, 611, to the arbitration clause here, I am reticent to break new ground by doing so in today's case.

Albeit by a different route, I concur in the judgment.